# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RHONDA MARLENE RHODES,**

**Plaintiff,**

-vs-                                                    **Case No.  6:10-cv-1254-Orl-31GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff Rhonda Marlene Rhodes (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. *See* Doc. No. 1.  The Claimant maintains she became disabled on December 31, 1996, due to scoliosis, rods in her back and back pain. R. 9, 32, 206, 209.[1]  At the administrative level, the Commissioner denied the Claimant's applications, finding that she is not disabled. R. 5-17.  For the reasons set forth below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g)**.

---

[1] The application for supplemental security income provides an onset date of December 31, 1993, but the application for disability insurance benefits and the June 18, 2007 disability report state an onset date of December 31, 1996.  R. 173, 179, 206.  At the hearing, the ALJ stated the onset date was 1996 and the Claimant did not object.  R. 31- 32.  Thus, the Court assumes that the 1993 date set forth in the supplemental security income application was a typographical error and should be 1996.

I.    **MEDICAL HISTORY**

    A.    Dr. Alex Perdoma

On August 20, 2007, Dr. Alex C. Perdoma, M.D., performed a consultative examination on the Claimant. R. 265-66.   The Claimant's chief complaint was back pain. R. 265.   The Claimant reported that she was diagnosed with thoracolumbar scoliosis at the age of 15 and underwent surgical correction in 1983.  *Id.*   However, she indicated that the pain never really went away and her symptoms had gotten worse over the last two to three years "to a point where she is now unable to stand, walk, or sit for more than fifteen to twenty minutes at a time." *Id.* The Claimant stated that she did not have medical insurance or financial resources and, therefore, was unable to pursue treatment.  *Id.*   She described the pain to be worse over the lumbosacral area, with radiation into both lower extremities with tingling and numbness.  R. 265.

Dr. Perdoma reported that the Claimant was in no acute distress.  *Id.*   She was seen walking down the hallway without difficulty and she did not require an assistive device.  *Id.*   He noted that she sat comfortably during the exam and was able to get on and off the examination table without any problem.  *Id.*   Upon examination, Dr. Perdoma reported the following:

> **Ext:**  Revealed no edema, cyanosis, clubbing or ulceration with good distal pulses.  Full range of motion of the upper and lower extremities, although painful bilateral shoulder abduction and hip flexion was seen due to pain radiating into the mid and lower back.  Patient was able to squat, and stand on toes and heels.
> **Back:**  Moderate thoracolumbar levoscoliosis with mild tenderness over the lower lumbar spinous processes.  Full range of motion of the cervical spine.  Range of motion of the thoracolumbar spine was decreased with forward flexion 65 degrees, extension 5 degrees, lateral flexion 20 degrees to the right and 15 degrees to the left.  Negative straight leg raise.
> **Neurological Exam:**  Intact with normal sensory, motor, and deep tendon reflexes.  Normal coordination and station.  No neurological gait

> deficits with negative Romberg.   Normal grip strength and fine manipulation.  Normal mental status exam.
> **Lumbosacral x-ray:**  Shows metal rods extending from the upper thoracic into the lower lumbar spine with moderate levoscoliosis.  Mild facet joint arthropathy noticed in the lower lumbar spine, but well preserved disc space.

R. 266.  Dr. Perdoma opined that the Claimant had a history of chronic back pain with mild musculoskeletal functional limitations on physical examination and radiographic evidence of mild osteoarthritis and thoracolumbar scoliosis.  *Id.*  He gave the following recommendations:

> [Claimant] could benefit from more aggressive physical therapy and home exercise program for back conditioning.  She should also be referred to an orthopedic specialist for further evaluation and possible revision of her Harrington rods.  She can stand, walk, and sit for six hours in an eight-hour workday with normal breaks.  She can occasionally lift and carry, but should limit the weight lifting to no more than ten to fifteen pounds.  She should avoid repetitive bending, stooping, or crouching.  She did not require an assistive devise for ambulation and no manipulative limitations were seen . . .

*Id.*

B.   Underline State Agency Opinions

On August 29, 2007, Rebekah Chan completed a residual functional capacity ("RFC") assessment based solely on a review of the Claimant's medical records. R. 268-75.  Ms. Chan opined that the Claimant can occasionally lift and/or carry 20 pounds, frequently 10 pounds; she can stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull without limits. R. 269.   Ms. Chan did not note any other limitations.  R. 269-73.  She indicated that the Claimant's symptoms were partially credible based on medical record. R. 273.

On January 10, 2008, Dr. Sunita Patel, M.D., completed an RFC assessment based solely on a review of the Claimant's medical records. R. 280-87.  Dr. Patel opined that the Claimant

can occasionally lift and/or carry 20 pounds, frequently 10 pounds; she can stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull without limits. R. 281.  Dr. Patel indicated that the Claimant could occasionally stoop or crouch. R. 282.  Dr. Patel stated that the Claimant does have a medically determinable impairment that would cause her symptoms. R. 285.

      C.      Orange County Medical Center

From January 30 through October 26, 2009, the Claimant was treated at Orange County Medical Center. R. 294-309.  On January 30, 2009, Teresa R. Hugill, ARNP, noted that the Claimant was present for her scoliosis and blood her in stool. R. 294.  Ms. Hugill indicated that the Claimant was noncompliant with therapy and had not followed-up with an orthopedic. R. 294.  Upon examination, Ms. Hugill noted that the Claimant's lower extremity bilateral strength was 3/5, and Claimant had spinal tenderness and curvature of the thoracic and lumbar spine. R. 295.  Ms. Hugill indicated that the Claimant was unable to stand for any length of time, 3 to 5 minutes, and Claimant experienced intermittent numbness in her legs. *Id.*  On March 5, 2009, Ms. Hugill noted that the Claimant missed an appointment and had not followed-up as directed. R. 296.  The Claimant reported that she smoked marijuana for pain relief. *Id.*

On September 24, 2009, the Claimant reported that her pain level was 10 on a scale of 1 to 10. R. 300.  She had numbness in both legs and was "weeping uncontrollably" during the visit. *Id.*  Ms. Hugill noted pain upon palpation of the Claimant's lower cervical and thoracic spine.  R. 301.  Ms. Hugill stated that the Claimant was in acute distress mentally and reported that the Claimant's mood was dysthymic, "one of pain" and anxious. *Id.*  Ms. Hugill diagnosed the

Claimant with anxiety disorder, not otherwise specified ("NOS").  *Id.*  On October 26, 2009, the

Claimant's reported pain level was 9 out of 10. R. 302.

  D. Dr. James Shea

  On November 5, 2009, the Claimant was examined by Dr. James K. Shea, M.D. R. 313-

17.  The Claimant had the following complaints:

  1. Occipital and frontal headaches a few times daily.

  2. Neck pain radiating into both shoulders (worse on right) and arms.

  3. Numbness in both of her arms, hands, and fingers.

  4. Central to left-sided chest pain.

  5. Upper back pain and low back pain radiating into both hips.

  6. Numbness and tingling in legs, feet, and toes.

  7. Swelling in left calf.

R. 313.  The Claimant rated her pain from a 6 to a 10 on a scale of 1 to 10.  *Id.*  She stated that

prolonged sitting, standing, walking, turning her head from side to side, overhead reaching,

bending over, and lifting aggravate the pain.  *Id.*  Also, household chores such as mopping,

sweeping, vacuuming, standing at the sink, cooking, doing laundry, making beds, carrying

groceries, and picking up things from the floor aggravate the pain.  *Id.* The Claimant reported

that she had a history of dizziness, memory changes and disorientation and a history of

depression without hallucinations or thoughts of suicidal ideation. R. 314.

  Dr. Shea noted that August 28, 2009 x-rays of the thoracic spine revealed:

  1. There is a scoliosis of the thoracic spine and lumbar spine, convex to the left
   in the lumbar region.
  2. Degenerative changes are present at multiple levels within the mid and lower
   lumbar spine.  No acute bony abnormality is appreciated.

R. 314.  Upon examination, Dr. Shea reported:

> Moderate tenderness to palpation over the right greater occipital nerve. Mild tenderness to palpation over the rhomboid muscles.  Non-tender to palpation over the left greater occipital nerve, cervical paraspinals, supraspinous ligament, spinous processes, and trapezius muscles.

R. 315.  Dr. Shea's notes reflect a reduced cervical and lumbar range of motion and decreased pin prick sensation in the arms and legs.  R. 315-16.  His assessment was chronic neck and back pain, status post scoliosis spine surgery. R. 317.

Dr. Shea also completed a medical assessment form on the Claimant's ability to perform work related activities. R. 291-93.  He indicated that the Claimant is only able to lift/carry 5 pounds and the medical findings supporting that limitation are "muscle spasms in the low back; markedly reduced lumbar [range of motion] secondary to Harrington rods and lumbar muscle spasms." R. 291.  Dr. Shea indicated that the Claimant can only stand and/or walk without interruption for 10 minutes due to her muscle spasms. R. 291-92.  He opined that the Claimant can only sit for a total of 2 hours in an 8-hour workday and only 10 minutes without interruption. R. 292.  Because of her Harrington rods and muscle spasms, he indicated that the Claimant should never climb, stoop, crouch, kneel or crawl and only occasionally balance. R. 292.  Dr. Shea opined that the Claimant's ability to reach, handle, feel, push/pull would be affected and she should avoid bulky and heavy objects.  *Id.*  He also indicated that the Claimant should avoid heights, moving machinery, temperature extremes, humidity and vibration. R. 293.

E.    Dr. Joseph DeLuca

On January 19, 2010, the Claimant was examined by Dr. Joseph N. DeLuca, M.D., Ph.D., P.A. for "[p]ain and mood-swings." R. 320-22.  Dr. DeLuca noted that the Claimant complained

of "headaches, anxiety, anger, nightmares, loneliness, concentration problems, dizziness, confusion, boredom, obsessions, memory problems, fatigue, guilt, sexual problems, and financial problems." R. 320. The Claimant denied the use of alcohol but admitted to the occasional use of marijuana. *Id.* She stated that she does go to the grocery store but does not cook, clean, drive a car, or pay her bills. *Id.*

Dr. DeLuca indicated that the Claimant "presented with a depressed and unhealthy appearance" and there was evidence of "depression, anxiety and hopelessness, as well as suicidal ideation but without active plan or intent." R. 321. He stated that her perceptual functioning was abnormal due to visual hallucinations of dark shadows and ghosts. *Id.* Dr. DeLuca diagnosed the Claimant with bi-polar disorder with psychotic features and gave her a general functioning assessment ("GAF") score of 35. R. 322. As to her functional ability, he stated that the Claimant "has impaired social functioning, task persistence, concentration difficulties, and deterioration in work-like settings." *Id.*

F.      Dr. Mary-Catherine Segota

On January 21, 2010, the Claimant was examined by Dr. Mary-Catherine Segota, Psy.D., P.A. at the request of the Social Security Administration. R. 323-29. Dr. Segota indicated that the Claimant's history is positive for chronic back pain, neck pain, left leg swelling below the knee, and an untreated broken hand. R. 324. The Claimant's current symptoms were irritability, sadness, decreased sleep, decreased concentration and anhedonia. *Id.* The Claimant reported that the symptoms occur daily. *Id.* She denied any suicidal ideation. *Id.*

With respect to the Claimant's ability to perform activities of daily living, Dr. Segota opined that the Claimant "is able to self-structure and is able to execute activities of daily living.

On a typical day, the [C]laimant gets up at noon, drinks coffee, smokes cigarettes, reads, goes back to bed, lays down, 'deals with the pain,' and goes to bed around midnight on average." *Id.* Dr. Segota noted that the Claimant had strained posture and held her back while sitting.  R. 325. She stated that her range of thought was normal.  *Id.*  Her affect was angry and tearful, and her current symptoms of depression included irritability, sadness, decreased sleep, decreased concentration, and anhedonia.  *Id.*  She stated that the Claimant did not show evidence of any perceptual abnormalities, such as delusions or illusions, although she reported that she sees ghosts or shadows a couple times per year.  *Id.*  Dr. Segota recommended that the Claimant receive a psychiatric medication and supportive psychotherapy to address her mood swings and anger and that such consistent psychiatric treatment would somewhat improve the Claimant's symptoms. R. 326.  She diagnosed the Claimant with major depressive disorder, cannabis use, personality disorder, NOS, and chronic pain, with a GAF score of 65.  *Id.*

Dr. Segota also completed a medical source statement wherein she indicated that the Claimant's ability to make judgments on simple work-related decisions, understand and remember complex instructions and carry out complex instructions was mildly impaired and her ability to make judgments on complex work-related decisions was moderately impaired.  R. 327. Dr. Segota opined that the Claimant's ability to interact appropriately with the public, supervisors and co-workers and her ability to respond to usual work situations and to changes in a routine work setting were moderately impaired. R. 328.  Dr. Segota noted that the Claimant reported a "significant amount of untreated low back pain" and she was stiff and held her back during the evaluation.  *Id.*

G.      Dr. Carol Grant

On January 22, 2010, the Claimant was examined by Dr. Carol Grant, M.D. for her neck and back pain. R. 330-33.   Dr. Grant noted no spine tenderness or muscle spasms of the Claimant's cervical spine. R. 332.  She did note paravertebral muscle tenderness.  *Id.*  Dr. Grant reported mild thoracolumbar scoliosis with paravertebral muscle tenderness but no spine tenderness.  *Id.*  She reported that the Claimant had a normal gait and she could squat and heel and toe walk.  R. 333.   Her diagnosis was chronic back and neck pain.  *Id.*  She stated that the Claimant's subjective complaints were consistent with the objective medical findings.  *Id.*

Dr. Grant also completed a medical source statement wherein she indicated the Claimant should never lift more than 10 pounds as it may aggravate her back and neck pain. R. 334-39.  Dr. Grant opined that the Claimant can sit 2 hours and stand and/or walk only 1 hour at one time without interruption, and in an 8-hour workday, the Claimant could sit 6 hours and stand and/or walk 4 hours. R. 335.  She indicated that the Claimant can only occasionally reach and push/pull with her hands.  R. 336.  The Claimant could frequently handle, finger or feel and occasionally operate foot controls. *Id.*   Dr. Grant stated that the Claimant can occasionally stoop and climb stairs and ramps, and never crouch or climb ladders or scaffolds. R. 336, 337.  The Claimant could frequently balance, kneel or crawl. *Id.*  Dr. Grant indicated that the Claimant should avoid unprotected heights and could occasionally tolerate moving mechanical parts, extreme heat or cold and vibrations.  R. 338.  Finally, Dr. Grant opined that the Claimant can shop, travel without assistance, ambulate without assistance, walk a block at a reasonable pace, use public transportation, climb a few steps at a reasonable page, prepare a simple meal, care for her personal hygiene and sort, handle or use paper/files. R. 339.

## II.   <u>ADMINISTRATIVE PROCEEDINGS</u>

On May 23, 2007, the Claimant filed an application for disability insurance benefits and supplemental security income, alleging disability as of December 31, 1996. R. 9, 32, 173, 179. On December 3, 2009, Administrative Law Judge Julia D. Gibbs (the "ALJ") held a video hearing. R. 28-54.[2]   The Claimant and vocational expert ("VE"), Dana Lessne, were the only persons to testify.  *Id.*   The Claimant withdrew her claim for disability insurance benefits and proceeded only on her claim for supplemental security income. R. 9, 32.  At the hearing, the Claimant noted that a friend drove her to the hearing. R. 36.   The ALJ indicated that the Claimant was tearful during her examination.  *Id.*   It does not appear in the transcript that the ALJ questioned the Claimant about her activities of daily living.

On April 8, 2010, the ALJ issued a decision finding that Claimant is not disabled. R. 9-17.  The ALJ made the following significant findings:

1. The [C]laimant has the following severe impairments:  degenerative disc disease and depression (20 CFR 416.920(c)). R. 11.

2. The [C]laimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 1520(d), 404.925 and 404.926). R. 12.

3. After careful consideration of the entire record, the undersigned finds that the [C]laimant has the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a) except that the [C]laimant needs the option of changing positions every hour.  She is also limited to unskilled work only.  The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting under SSR 85-15.  R. 13.

---

[2] The Claimant appeared in Orlando, Florida, and the ALJ presided over the video hearing from Falls Church, Virginia. R. 9.

4. Considering the [C]laimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the [C]laimant can perform (20 CFR 416.969 and 416.969(a)). R. 16.

In determining the Claimant's RFC, the ALJ stated the following:

> As for the opinion evidence, I rely on the objective findings reported by the consultative examiner Dr. Grant as detailed above. However, I assign little weight to the limitations that the consultative examiner set. They are based primarily on the [C]laimant's subjective allegations and not on the objective findings. See Exhibit 14F. I assign great weight to the findings of Dr. Segota, consultative examiner, who found that the [C]laimant suffered from depression, but was able to work at an unskilled level. See Exhibit 13 F. I assign little weight to the January 2010 examination performed by Dr. DeLuca at the request of [C]laimant's counsel. I find that the [C]laimant's statements are contradictory to the record and exaggerated to this examiner. Thus, his opinion is inconsistent with the medical evidence of record as a whole. For example, the [C]laimant states that she cannot cook, drive, or pay her bills, though she states otherwise throughout the record. She also claimed to have psychological symptoms that had not been previously mentioned to any other examiner. See Exhibit 12F. I assign great weight to the August 2007 opinion of Dr. Perdomo who found that the [C]laimant could work at the sedentary level and needed more physical therapy and a home exercise plan for improvement. See Exhibit 2F. I accord little weight to the opinion of the non-examining Ms. Chan and Dr. Patel, both of whom found that the [C]laimant could work at the less than light level. See Exhibit 6F, 3F. These opinions are inconsistent with medical evidence of record as a whole. I also assign little weight to the opinion of Dr. Shea, who performed a medical assessment of the [C]laimant in November 2009 at the [C]laimant's attorney's request. His finding that the [C]laimant can work at less than sedentary level is too restrictive and inconsistent with the objective medical evidence of record. See Exhibit 8F. I have taken into consideration the [C]laimant's subjective allegations by reducing her [RFC] to unskilled, sedentary work.
>
> In sum, the above [RFC] assessment is supported by the objective evidence and medical findings established in this record. To the extent that the [C]laimant alleges that she cannot work within the [RFC], I find the allegation not fully credible.

R. 15. Therefore, the ALJ assigned great weight to the opinions of Drs. Segota and Perdoma,

and little weight to the opinions of Drs. Grant, DeLuca, Chan, Patel and Shea. *Id.*  The ALJ did not articulate how Dr. Shea's opinion is inconsistent with the objective medical evidence of record.

Upon request by the Claimant, the Appeals Council denied review of the ALJ's decision. R. 1-5.  On August 23, 2010, Claimant filed an appeal before this Court.  Doc. No. 1.

## III.   THE ISSUES

The Claimant maintains that the Commissioner erred as follows:  1) neither the ALJ nor the Appeals Council performed their duty to be inquisitorial rather than adversarial; 2) the ALJ did not apply the correct legal standards to the opinion evidence; and 3) the ALJ did not apply the correct legal standards to Claimant's subjective complaints of pain. Doc. No. 16 at 2. Claimant requests that the decision of the Commissioner be reversed and the Court award benefits or, in the alternative, the case be remanded to the Commissioner for further consideration.  *Id.* at 23.

The Commissioner maintains that:  1) the ALJ's determination of Claimant's severe impairments and RFC are supported by substantial evidence; 2) the ALJ properly assessed the weight given to the consultative examiner opinions; and 3) the ALJ's credibility finding is supported by substantial evidence. Doc. No. 19.  Accordingly, the Commissioner maintains that the decision should be affirmed.  *Id.* at 21.

## IV.   LEGAL STANDARDS

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 CFR §§ 404.1520(b), 416.920(b).   At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  Step three involves the determination whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e).  Next, the ALJ must determine at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  At the last step of the sequential evaluation process, step five, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. 20 CFR §§ 404.1520(g), 416.920(g).

### B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the district court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand

appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[3]

## V.   ANALYSIS

### A. WHETHER THE ALJ ERRED IN DETERMINING THE CLAIMANT'S RFC AND CONSIDERING THE OPINION EVIDENCE

The Claimant maintains that the ALJ erred in analyzing the opinion evidence. Doc. No.

---

[3] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

16 at 2.  One argument raised by the Claimant is that the ALJ did not explain how Dr. Shea's opinion was too restrictive and inconsistent with the medical record as a whole.  *Id.* at 17.  The Commissioner maintains that because the "ALJ thoroughly reviewed the medical evidence that supported her RFC findings," that is "sufficient to show what evidence contradicted Dr. Shea's opinion."  Doc. No. 19 at 17.  The Commissioner then points out evidence in the record which contradicts Dr. Shea's opinion. Doc. No. 19 at 17.

This case presents the recurring situation where an ALJ fails, in his or her decision, to provide the reasons for rejecting a medical opinion, supported by substantial evidence, and the Commissioner argues that the final decision should be affirmed by supplying those reasons *post hoc*.  Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability.  The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.   In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"  *Winschel*, 631 F.3d at

1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).  *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

In this case, the ALJ gave great weight to the opinions of Dr. Segota and Dr. Perdoma, and little weight to the remaining opinions of Dr. Grant, Dr. DeLuca, Dr. Shea and the state agency consultants. R. 15.  In according Dr. Shea's opinion little weight, the ALJ summarily stated:  "His finding that the [C]laimant can work at less than sedentary level is too restrictive and inconsistent with the objective medical evidence of record." R. 15. The ALJ did not explain how or why Dr. Shea's opinion was inconsistent with the objective medical evidence.  The ALJ did not point to any specific medical opinion, treatment record, or any other evidence which contradicts Dr. Shea's opinion.  R. 15.  In *Morrison v. Barnhart*, 278 F.Supp.2d 1331, 1336 (M.D. Fla. 2003), another division of this Court stated the following:

> . . . the ALJ's explanation that Dr. Yonker's opinion "is not consistent with the evidence of record as a whole, including the doctor's own examination findings," (T. 19) is too general to permit meaningful judicial review in this case.  Upon consideration, the court finds the ALJ erred by failing to properly evaluate Dr. Yonker's opinion, and a remand is warranted.  On remand, the ALJ is directed to reevaluate Dr. Yonker's opinion and identify specifically what evidence of record "as a whole" was inconsistent and which of Dr. Yonker's own examination findings were inconsistent with his opinion.

*Id*.  As in *Morrison*, the ALJ's statement that Dr. Shea's opinions are "too restrictive and inconsistent with the objective medical evidence or record" is too general to allow for meaningful judicial review. Similarly, in *Monte v. Astrue*, Case No. 5:08-cv-101-Oc-GRJ, 2009

WL 210720 at *6 (M.D. Fla. Jan. 28, 2009), the Court held:

> When assessing the Plaintiff's impairments, the ALJ was required to make "specific and well-articulated findings . . ." [B]ecause an ALJ is not permitted to substitute his judgment for that of the medical experts, the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision.   Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.

*Id*.  (quoting *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)).  Thus, even if the possible reasons for rejecting a medical opinion are set forth in the ALJ's recitation of the factual background or are located somewhere within the record, the ALJ is required to specifically state those reasons and identify the specific evidence relied upon when the ALJ rejects that medical opinion later in the decision.  This is so because, as the Commissioner is well aware, on appeal, the Court is not permitted to reweigh the evidence or to reach its own conclusions about the weight that should be provided to the medical evidence.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Therefore, reversal is required where an ALJ fails to sufficiently articulate the reasons, supported by substantial evidence, for rejecting a medical opinion.

As set forth above, the Commissioner has attempted to supply reasons for rejecting Dr. Shea's opinion *post hoc*.  Doc. No. 19 at 17.  The Eleventh Circuit has recently held that "a court may not accept appellate counsel's *post hoc* rationalizations for agency actions," and "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Commissioner of Social Security*, 2010 WL 2511385 at *3 (11th Cir. June 23, 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974) (emphasis in original)).[4]  It is not appropriate for the Commissioner to provide *post hoc* reasons for rejecting medical opinions and the Commissioner's reweighing of the evidence in place of the ALJ is not helpful for the Court

---

[4] Unpublished decisions of the Eleventh Circuit are not binding, but are persuasive authority.

on review.  It is the ALJ's responsibility to comply with the Eleventh Circuit's standard. If the ALJ does not state the weight given to the medical opinions of record or fails to adequately provide the reasons therefor, supported by substantial evidence, the Commissioner cannot supply those findings *post hoc*.  Accordingly, it is recommended that this case be reversed and remanded based on the ALJ's failure to adequately articulate reasons for giving Dr. Shea's opinion little weight.

### B.  REMAND

As set forth above, the Claimant requests that the Commissioner's decision be reversed with a finding of disability and an award of benefits or, in the alternative, remanded for further proceedings. Doc. No. 16 at 23.  A remand for an award of benefits is appropriate only where the evidence establishes without any doubt that the claimant was disabled. *See Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  In this case, the Court is unable to conclude that the Claimant is disabled without any doubt.  Accordingly, it is recommended that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

### VI.  <u>CONCLUSION</u>

Based on the forgoing, the undersigned recommends that the Court:

1.  **REVERSE and REMAND** the final decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) because the decision is not supported by substantial evidence;[5] and

2.  Direct the Clerk to enter judgment in favor of the Claimant and close the case.

---

[5] Because the undersigned recommends that the Court find that the final decision of the Commissioner is not supported by substantial evidence, it is unnecessary to address the other issues raised by the Claimant.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 4, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Report and Recommendation to:

Richard A. Culbertson, Esq.
Law Office of Richard A. Culbertson
3200 Corrine Dr., Ste. E
Orlando, Florida          32803

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida            33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Julia D. Gibbs
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR
Nat'l Hearing Center
5107 Leesburg Pike
Falls Church, Virginia22041